UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

BENNY W. McCROSKEY,

        Petitioner,

v.                                          Case No.  2:13cv168

HAROLD W. CLARKE, Director,
Virginia Department of Corrections,

        Respondent.

## REPORT AND RECOMMENDATION

Before the Court is the Petitioner Benny McCroskey's ("McCroskey") Petition for a Writ of *Habeas Corpus* filed pursuant to 28 U.S.C. § 2254 ("Petition"), ECF No. 1, a brief in support of his petition, ECF No. 4, and the Respondent's Motion to Dismiss ("the Motion"), ECF No. 14, to which McCroskey filed an opposition, ECF No. 17.  The Motion was referred for disposition to the undersigned U.S. Magistrate Judge ("undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges.  After reviewing the briefs, the undersigned **DENIES** McCroskey's motion for an evidentiary hearing and appointment of counsel, ECF No. 3, and disposes of the Motion on the papers pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned finds McCroskey's claims are either procedurally defaulted or without merit, and therefore, **RECOMMENDS** the Respondent's Motion to Dismiss, ECF No. 14, be **GRANTED** and McCroskey's Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 25, 2011, the Spotsylvania County Circuit Court found McCroskey guilty of second-degree murder and grand larceny, after he entered *Alford* pleas to both charges. *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) ("An individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."). In exchange for McCroskey's plea and pursuant to a plea agreement, the Commonwealth amended the charge in the indictment from first-degree murder to second-degree murder, and dismissed the following charges: felony rape, felony forcible sodomy, felony robbery, two counts of felony credit card fraud, and felony identity theft. In the final sentencing order entered on March 15, 2011, the trial court imposed a twenty-year prison sentence for the second-degree murder conviction, to run consecutive to a five-year prison sentence for the grand larceny conviction, for a total of twenty-five years of active incarceration. However, the twenty-five year sentence was to run concurrent with any probation violation convictions. McCroskey did not directly appeal his conviction or sentence. McCroskey did file a "writ of error" with the trial court on April 6, 2011, in which he alleged constitutional violations and attempted to withdraw his plea. The court dismissed the "writ of error," stating it no longer had jurisdiction over the case.

On February 8, 2012, McCroskey filed a state *habeas corpus* petition with the Spotsylvania County Circuit Court. In it, McCroskey alleged the following constitutional violations: his trial counsel was ineffective in violation of his Sixth Amendment right for failing to argue that undue influence was used upon key witnesses in the grand jury (Claim A-1), for failing to dismiss the indictment based on the unauthorized presence of Commonwealth

representatives in the grand jury proceedings (Claim A-2), for advising McCroskey to enter a plea despite his proclaimed innocence and tainted grand jury proceedings (Claim A-3); his right to due process and a fair trial were violated because of the unauthorized presence of an Assistant Commonwealth Attorney in the grand jury proceedings (Claim B); his Sixth Amendment and Fourteenth Amendment rights were violated because of the unauthorized presence of a lead homicide detective during the grand jury proceedings (Claim C); his Sixth Amendment and Fourteenth Amendment rights were violated when the trial court and the Commonwealth Attorney allowed him to enter a plea agreement and to plead to a tainted indictment, when aware of the unauthorized presence of various individuals in the grand jury proceedings (Claim D); and his Fourteenth Amendment rights were violated when McCroskey was indicted by a special grand jury that, under Virginia law, has no authority to indict (Claim E). Ultimately, the Spotsylvania County Circuit Court denied McCroskey's petition and issued a final order of dismissal on April 9, 2012. McCroskey then appealed this dismissal to the Virginia Supreme Court on August 9, 2012. The Virginia Supreme Court reviewed the record, held that "there is no reversible error," and accordingly refused McCroskey's petition for appeal on January 25, 2013.

On March 20, 2013,[1] McCroskey filed this federal *habeas*, ECF No. 1, his first § 2254, alleging the following claims: his defense counsel was ineffective under the Sixth Amendment because he failed to provide proper advice regarding the presence of unauthorized individuals in the grand jury proceedings and because defense counsel never argued a motion to dismiss the indictment on this basis (Claim One); the trial court violated McCroskey's Fifth, Sixth and

---

[1] The undersigned uses the date McCroskey placed his original Petition in the prison mailing system. *See* ECF No. 1 at 46; *see also Houston v. Lack*, 487 U.S. 266, 276 (1988).

3

Fourteenth Amendment rights to a fair trial and due process by allowing him to plead to a "tainted" indictment that was not supported by probable cause (Claim Two); the trial court violated McCroskey's Sixth and Fourteenth Amendment rights to a fair trial, due process, and equal protection when the court dismissed his motion to withdraw his plea (Claim Three); and McCroskey's defense counsel was ineffective in violation of his Sixth Amendment rights because the attorney conducted no independent investigation and counseled McCroskey to accept a plea agreement despite McCroskey's claims of innocence and multiple alternative viable defenses (Claim Four). Shortly after the Court issued its Order granting the Petitioner *in forma pauperis* status, the Petitioner filed a pleading captioned "Motion to Compel Pertinent Documents." ECF No. 10. Construing the Petitioner's motion as a request for complimentary copies of the attachments to his *habeas* petition, on July 2, 2013 the Court issued an Order denying the motion, finding that the Petitioner's status did not entitle him to free copies. ECF No. 12. The Virginia Attorney General, on behalf of the Respondent, then submitted a Rule 5 answer, a Motion to Dismiss with a brief in support, and a *Roseboro* Notice on July 12, 2013. ECF Nos. 13-16. McCroskey responded to the Respondent's Motion to Dismiss on July 30, 2013, ECF No. 17. The Respondent has not replied, and the time to do so has passed. However, on September 20, 2013, the Petitioner filed a Notice of Appeal to the Fourth Circuit Court of Appeals with respect to the Court's July 2 Order denying him free copies. ECF No. 18. On December 24, 2013, the Fourth Circuit issued its Opinion and Judgment dismissing the Petitioner's appeal. ECF Nos. 21, 22. The Fourth Circuit then issued its Mandate on January 15, 2015. ECF No. 23. Therefore, the Motion is now ripe for disposition.

## II. PROCEDURAL ISSUES

### A. Statute of Limitations

McCroskey filed his *habeas* petition in this Court before the applicable statute of limitations deadline passed, and therefore it is timely. Section 2254 petitions are subject to a one-year statute of limitations. 28 U.S.C. § 2244(d)(1). Generally, this period begins to run from "the date on which the judgment became final by the conclusion of direct review." 28 U.S.C. § 2244(d)(1)(A). However, in calculating the limitations period, the Court excludes, or tolls, the time during "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" is pending. 28 U.S.C. § 2244(d)(2).

McCroskey's twenty-five year sentence was entered by order of the trial court on March 15, 2011. That sentence became final on April 14, 2011, when McCroskey did not appeal to the Virginia Court of Appeals. *See* Va. Sup. Ct. R. 5:14. As a general matter, therefore, under 28 U.S.C. § 2244(d)(1), McCroskey had until April 14, 2012 to file his *habeas* petition in this Court. However, this time period was tolled from February 8, 2012, when McCroskey filed his state *habeas* in Spotsylvania County Circuit Court, to April 25, 2013, when the Virginia Supreme Court's January 25, 2013 denial became final. *See* Sup. Ct. R. 13.1. Because 301 days had already run before McCroskey filed his state *habeas*, he only had 64 days from April 25, 2013 to file his *habeas* petition in this Court. In other words, the statute of limitations deadline was extended to June 28, 2013. McCroskey was within the statute of limitations deadline when he filed this Petition on March 20, 2013. ECF No. 1 at 46.

### B. Exhaustion and Procedural Default

Section 2254 petitions challenge a state's custody of a prisoner "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "In the interest of giving the state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing, a state prisoner must exhaust all available state remedies before he can apply for federal *habeas* relief." *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998) (citing 28 U.S.C. § 2254(b); *Matthews v. Evatt*, 105 F.3d 907, 910-11 (4th Cir. 1997)). "To exhaust state remedies, a *habeas* petitioner must fairly present the substance of his claim to the state's highest court." *Id.* (citing *Matthews*, 105 F.3d at 911). In Virginia, that court is the Virginia Supreme Court. "The burden of proving that a claim is exhausted lies with the *habeas* petitioner." *Id.* (citing *Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994)).

"A distinct but related limit on the scope of federal *habeas* review is the doctrine of procedural default." *Breard*, 134 F.3d at 619. This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a *habeas* petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the *habeas* petitioner has procedurally defaulted his federal *habeas* claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "A state procedural rule is adequate if it is 'regularly or consistently applied by the state court' and is independent if it does not rely on a rule of federal constitutional law." *Silk v. Johnson*, No. 3:08cv271, 2009 WL 742552, at *2 (E.D. Va. Mar. 20, 2009) (quoting *Mu'Min v. Pruett*, 125 F.3d 192, 196 (4th Cir. 1994) (citing *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985))). "After determining that a state court relied on an adequate

and independent state-law ground for decision, [courts] 'may . . . not [inquire] into whether the state court properly applied its own law.'" *Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998) (citing *Barnes v. Thompson*, 58 F.3d 971, 974 n.2 (4th Cir. 1995)).

However, "the exhaustion requirement for claims not fairly presented to the state's highest court . . . is met when a state procedural rule would bar consideration if the claim was later presented to the state court." *Matthews*, 105 F.3d at 911. Virginia Code § 8.01-654(A)(2) provides that "[a] *habeas corpus* petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." This provision offers an independent and adequate state law ground that bars federal *habeas* review. *See, e.g., Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 587-88 (E.D. Va. 2006). The Court now turns to each claim in the instant petition to determine whether McCroskey has exhausted his state court remedies.

McCroskey exhausted his state court remedies as to Claims One and Four in the instant petition, his ineffective assistance of counsel claims. *See* ECF No. 15 Ex. 1 at 1-5 (McCroskey's state *habeas* petition). Claim One—that counsel was ineffective for failing to contest the indictment and the alleged unauthorized individuals in the grand jury proceeding—was raised in McCroskey's state court *habeas* petition as Claim A-2. Similarly, Claim Four—that McCroskey's trial counsel was ineffective for failing to conduct an independent investigation and for advising him to accept the plea agreement and plead guilty despite his claims of innocence—was raised in the state court *habeas* as Claim A-3. The trial court's denial was then appealed to the Virginia Supreme Court, which refused review. Therefore, McCroskey has met

7

his burden as to Claims One and Four and this Court will evaluate them on the merits.

Conversely, Claims Two and Three are procedurally defaulted and this Court is barred from reaching the merits as to these claims. In Claim Two, McCroskey alleges violations of his Fifth, Sixth, and Fourteenth Amendment rights when the trial court allowed him to plead guilty to a "tainted" indictment. Claim Two in the instant petition was raised as Claim D in McCroskey's state *habeas* petition, but the state court ruled that Claim D was procedurally barred by the rule in *Slayton v. Parrigan*, 205 S.E.2d 680 (1974). The Virginia Supreme Court saw no reversible error in the trial court's denial of McCroskey's claim on procedural default grounds under *Slayton v. Parrigan*, and therefore, the state court "relied on an adequate and independent state-law ground for [the] decision." *Fisher*, 163 F.3d at 844. Specifically, the trial court dismissed this claim in the state *habeas* petition as "not cognizable in habeas corpus . . . [because it] could have been raised at trial or on appeal . . . ." ECF No. 15 Ex. 2 at 2. Under *Slayton v. Parrigan*:

> A prisoner is not entitled to use habeas corpus to circumvent the trial and appellate processes for an inquiry into an alleged non-jurisdictional defect of a judgment of conviction. Since the issue of the alleged constitutional[ violation] could have been raised and adjudicated at petitioner's trial and upon his [direct] appeal to [the Virginia Supreme Court, petitioner] had no standing to attack his final judgment of conviction by habeas corpus.

215 Va. 27, 30, 205 S.E.2d 680, 682 (Va. 1974). This rule, which is regularly or consistently applied by the Virginia Supreme Court, *see, e.g., Elliot v. Warden*, 274 Va. 598, 601, 652 S.E.2d 465, 473 (Va. 2007), is an independent state procedural rule that does not rely on federal law. *See Silk v. Johnson*, No. 3:08cv271, 2009 WL 742552, at *2 (E.D. Va. Mar. 20, 2009) (quoting *Mu'Min v. Pruett*, 125 F.3d 192, 196 (4th Cir. 1994) (citing *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985))). Here, because the Virginia Supreme Court found no reversible error in the Circuit

8

Court's decision, and because the Circuit Court summarily dismissed this claim as procedurally barred, this Court is barred from reviewing McCroskey's Claim Two because the state court relied on an independent and adequate state law ground. *See Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 587-88 (E.D. Va. 2006).

In Claim Three, McCroskey argues that his due process rights were violated when the trial court dismissed his motion to withdraw his guilty plea. However, he did not raise this issue on direct appeal or as a ground for relief in his state *habeas* petition. On page four of his state *habeas* petition, McCroskey states that "[t]he courts failure to address defendants motion to dismiss indictments was brought up in a motion to withdrawl alford plea (pursuant to 19.2-296) filed pro se after learning of the violations [sic]. . . ." ECF No. 15 Ex. 1 at 4. McCroskey failed to raise this as a ground for relief in his state *habeas* petition and instead, collaterally mentioned it as a previous proceeding or motion he had filed in the past. McCroskey did not present this claim to the Virginia Supreme Court either on direct appeal or through collateral *habeas* review, and if he attempted to present it now, the claim would be time-barred under Va. Code § 8.01-654(A)(2). Under the Virginia Code, McCroskey had until April 14, 2012—one year from the date his sentence became final on April 14, 2011 when he did not appeal the conviction to the Virginia Court of Appeals—to file any *habeas* claims in state court. *Id.* Therefore, this provision offers an independent and adequate state law ground that bars federal *habeas* review of Claim Three. *See, e.g., Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 587-88 (E.D. Va. 2006); *see also Matthews*, 105 F.3d at 911 ("[T]he exhaustion requirement for claims not fairly presented to the state's highest court . . . is met when a state procedural rule would bar consideration if the claim was later presented to the state court.").

McCroskey may overcome procedural default by "showing [] cause and prejudice or a fundamental miscarriage of justice due to [his] actual innocence." *Silk*, 2009 WL 742552, at *3 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998), and *Harris v. Reed*, 489 U.S. 255, 262 (1989)). Throughout his briefs, McCroskey intermittently asserts his innocence without supporting evidence. Therefore, he cannot demonstrate a fundamental miscarriage of justice because conclusory statements of actual innocence are insufficient, and he offers no argument, new reliable evidence, or factual contentions to substantiate such a claim.[2] *Royal v. Taylor*, 188 F.3d 239, 244 (4th Cir. 1999) ("In order to use an actual innocence claim as a procedural gateway to assert an otherwise defaulted claim, 'the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the *new evidence*.'") (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)) (emphasis added).

"[C]ause" refers to "some objective factor external to the defense [that] impeded counsel's [or the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). In his opposition to the motion to dismiss, McCroskey argues that this Court's failure to address Claims Two and Three "will result in a complete miscarriage of justice," but again, he offers no other argument as to why the claims were either not previously raised at trial or on appeal, or not previously raised as a ground in his state *habeas* petition, nor does he offer any "objective factor" that prevented him from presenting these claims. Therefore, McCroskey failed to overcome procedural default because he did not present argument regarding some objective

---

[2] The fact that the Defendant entered an *Alford* plea rather than a plead of guilty does not substantiate a claim of innocence. The Defendant's *Alford* plea "implies a confession ... of the truth of the charge ... [and by this plea he] agrees that the court may consider him guilty" for the purpose of imposing judgment and sentence. *Commonwealth v. Jackson*, 499 S.E.2d 276, 278 (Va. 1998), quoting *Honaker v. Howe*, 60 Va. (19 Gratt.) 50, 53 (1869).

factor external to the defense that impeded his efforts to comply with the rule. *Accord Strickler*, 527 U.S. at 283 n.24. Absent cause, a prejudice analysis is unnecessary. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995) (noting that courts should not consider the issue of prejudice absent cause to avoid the risk of reaching an alternative holding). The undersigned would find that Claims Two and Three are procedurally defaulted and, thus, should be dismissed. Accordingly, the Court now turns to the merits of McCroskey's Claims One and Four.

### III. STANDARD OF REVIEW

The Supreme Court of Virginia refused McCroskey's *habeas* appeal in a two-sentence order, where it found "no reversible error in the judgment complained of . . . [and therefore] the Court refuse[d] the petition for appeal." ECF No. 15 Ex. 4 at 1. This constitutes an adjudication on the merits, and the parties do not appear to otherwise contest this characterization. *See Bell v. Jarvis*, 236 F.3d 149, 163 (4th Cir. 2000) (*en banc*) ("[Courts] must uphold the state court's summary decision unless [their] independent review of the record and pertinent federal law persuades [them] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented.") (citations omitted); *see also Renoir v. Virginia*, No. 7:99cv580, 2001 WL 34801301, at *8 n.7 (W.D. Va. July 31, 2001) (holding Virginia Supreme Court adjudicated claim on the merits where it found "no reversible error in the judgment complained of").

The Antiterrorism and Effective Death Penalty Act ("AEDPA") "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, --- S. Ct. ---, 2013 WL 5904117, at *4 (U.S. Nov. 5, 2013). When a state court addresses the merits of a claim that is raised in a 28 U.S.C. § 2254 petition, the Court may not

grant federal *habeas* relief on claims of legal error by the state court unless, *inter alia*, the state court decision is contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011). The Court independently reviews whether that decision satisfies either standard. *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is "contrary to" clearly established federal law if the state court "arrives at a conclusion opposite to that reached by th[e U.S. Supreme] Court on a question of law or if the state court decides a case differently than th[e U.S. Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. As to whether a state court decision is an "['objectively'] unreasonable application" of clearly established federal law, the state court must "identif[y] the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of the prisoner's case." *Id.* at 410. Ultimately, though, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is *firmly convinced* that a federal constitutional right has been violated." *Id.* at 389 (emphasis added). It is this Court's obligation to focus "on the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997).

Federal *habeas* relief is precluded, "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. C.t at 786. "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state

proceedings." *Id.* (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)). In other words, "AEDPA prohibits federal habeas relief for any claim adjudicated on the merits in state court, unless one of the exceptions listed in § 2254(d) obtains." *Premo v. Moore*, 131 S. Ct. 733, 739 (2011). Here, as in *Premo*, the relevant exception is "permitting relitigation where the earlier state decision resulted from an 'unreasonable application of' clearly established federal law." *Id.*; 28 U.S.C. § 2254(d)(1).

## IV. ANALYSIS

### A. Claims One and Four: Ineffective Assistance of Counsel

In Claim One, McCroskey argues that defense counsel was ineffective because counsel "advised him adversely about a relevant law pertaining to who can be present during the grand jury" and such advice "directly affected petitioner's ability to make knowing and voluntary decisions regarding acceptance of a plea." ECF No. 1 at 5. In other words, McCroskey argues that his attorney was ineffective because he gave him bad legal advice regarding who can be present during grand jury proceedings under Virginia law, and ultimately, this affected his decision to enter a plea agreement. Similarly, in Claim Four, McCroskey argues that his attorney was ineffective because he "conducted no independent investigation, and counseled petitioner to accept a plea despite his claims of innocence and multiple alternative viable defenses." *Id.* at 32. In the context of Sixth Amendment ineffective assistance of counsel claims that have already been rejected by the state court, the United States Supreme Court has summarized the high bar federal *habeas* petitioners face:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' [466 U.S. 668, 689 (1984)]; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and

when the two apply in tandem, review is 'doubly' so, *Knowles [v. Mirzayance]*, 556 U.S. [---, ---], 129 S. Ct. [1411, 1420 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at --- , 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Premo*, 131 S. Ct. at 740.

Generally, when McCroskey asserted the above ineffective assistance of counsel arguments as Claims A-2 and A-3 in state court, he had to show both that his defense counsel provided deficient assistance and that he was prejudiced as a result. 466 U.S. 668, 700 (1984). First, to establish deficient performance, McCroskey was required to show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688-89 (holding that there is a strong presumption that trial counsel provided reasonable professional assistance). Second, McCroskey was also required to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 687, 693-94 (holding that counsel's errors must be "so serious as to deprive the defendant of a fair trial," and that the petitioner must "show that the errors had some conceivable effect on the outcome of the proceeding.").

The Spotsylvania County Circuit Court, and subsequently the Virginia Supreme Court on appeal, determined that McCroskey failed to satisfy his burden under both prongs of *Strickland*. Specifically, the trial court found that the "asserted attorney advice to the petitioner that he plead guilty is inconsistent with the petitioner's statements to the Court. The Court further [found] that the petitioner has failed to show that he was prejudiced by any of the alleged acts or omissions of

14

his attorney," and therefore, the trial court summarily dismissed McCroskey's ineffective assistance of counsel claims. ECF No. 15 Ex. 2 at 2. Because the Court would find that the state court did not unreasonably apply *Strickland* to McCroskey's Claims One and Four, the Court would grant the Respondent's motion to dismiss Claims One and Four on the merits. *Cf. Premo*, 131 S. Ct. at 739; 28 U.S.C. § 2254(d)(1).

### 1.  The Performance of McCroskey's Attorney

Under the performance prong, the Court must answer a highly deferential question: "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 740. Under Claims One and Four, there is a reasonable argument to be made that McCroskey's counsel "was within the 'wide range' of reasonable professional assistance," and therefore, it was not unreasonable for the state court to deny his claim on this basis. *Richter*, 131 S. Ct. at 787 (citing *Strickland*, 466 U.S. at 689).

In Claim One, McCroskey argues that his attorney gave deficient advice regarding the presence of certain individuals during the special grand jury proceeding that returned an indictment against him. Under Virginia law, special grand juries are convened to investigate whether a crime has been committed, and under statute, such juries are invested with broad investigative powers. *See Vihko v. Commonwealth*, 393 S.E.2d 413, 415 (Va. Ct. App. 1990). Prior to 2001, special grand juries could only investigate crimes and synthesize the findings into a report, which was then presented to a regular grand jury, which had the power to indict. *Id.* However, in 2001, the General Assembly vested special grand juries with the power to indict. Va. Code § 19.2-206(A) ("Special grand juries may be impanelled by a circuit court . . . (iii) upon request of the attorney for the Commonwealth to investigate and report on any condition

that involves or tends to promote criminal activity and consider bills of indictment to determine whether there is sufficient probable cause to return each such indictment as a 'true bill.'"); *see also* Va. Code § 19.2-213 ("A majority, but not less than five, of the members of a special grand jury convened upon request of the attorney for the Commonwealth must concur in order to return a 'true bill' of indictment.").

Moreover, the attorney for the Commonwealth, also known as the prosecutor, may be present during the investigatory stage of the special grand jury, but not during evaluations of the testimony and evidence or during deliberations.  Va. Code § 19.2-210.  Similarly, "[a]t the request of the special grand jury, the court may designate special counsel to assist it in its work, and may also provide it with appropriate specialized personnel for investigate purposes." Va. Code § 19.2-211.  Here, McCroskey argues that "on [January 26, 2010] the date in question, neither Assistant Commonwealth Attorney Brian Boyle or lead detective J.D. Harris were appointed to any specialized position, but they were present and participated in the investigation which included interrogating witnesses." ECF No. 1 at 6 (citing ECF No. 1 Ex. 16).  First, prosecutors are allowed to be present and participate in the special grand jury investigation, as long as they are not present for the special grand jury deliberations.  Va. Code § 19.2-210; *Vihko*, 393 S.E.2d at 416.  Therefore, because there is no allegation that an attorney for the Commonwealth was present during deliberations, nor is there any evidence of this, the first prong of McCroskey's argument is misplaced because based on the record before it, the Court would find that the prosecutors acted in accordance with the Virginia law.  Second, McCroskey is correct; based on a review of the state court record, lead detective J.D. Harris was appointed as a special investigator pursuant to Va. Code § 19.2-211 on January 28, 2010.  McCroskey alleges,

however, that Detective Harris participated in the special grand jury proceedings two days before he was appointed, on January 26, 2010. ECF No. 1 at 6 (citing ECF No. 1 Ex. 16). Exhibit 16 to McCroskey's petition is six isolated pages that are purportedly copies of the special grand jury proceeding official transcript (in order: pages 85, 97, 99, 111, 112, and 1). These pages, however, do not conclusively establish that Detective Harris participated in the special grand jury on January 26, 2010. This Court has no information regarding the total duration of the special grand jury proceeding, the days on which any specific witnesses were called, or the days on which certain special investigators assisted and participated. The state court records do reflect that McCroskey was indicted by the special grand jury on May 18, 2010. On this record alone, the Court is left to conclude that Detective Harris was appointed on January 28, 2010 and served as a special investigator from that day forward, until McCroskey was indicted on May 18, 2010. Any other conclusion would be purely speculative.

Additionally, even assuming Detective Harris participated as a special investigator in the special grand jury two days before his official appointment, McCroskey still faces the "formidable" burden of proving that it was unreasonable for the state court to find that his trial attorney did not render deficient performance in the advice he provided regarding the special grand jury under Virginia law. *Titlow*, --- S. Ct. ---, 2013 WL 5904117, at *4. The Court would not make such a finding. The state court records show that on December 22, 2010, McCroksey's attorney filed a "Motion for Grand Jury Evidence." In that motion, his attorney requested access to testimony presented during the grand jury proceedings, pursuant to Virginia Code § 19.2-212(B). The Commonwealth Attorney opposed this request. However, on January 25, 2011, Judge D.H. Beck entered an "Order for Release of Special Grand Jury Evidence," and ordered

17

that pursuant to the statute cited by defense counsel, the Commonwealth was to provide copies of the special grand jury transcript to the defense. Presumably, defense counsel reviewed the special grand jury transcripts, but did not find any meritorious argument to raise with the trial court. In light of the state records, it was not unreasonable for the state court to presume that trial counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Therefore, the Court finds that McCroskey failed to meet the doubly deferential burden under the performance prong for Claim One.

Similarly, McCroskey fails to satisfy his burden under the performance prong for Claim Four. In Claim Four, McCroskey argues that his attorney was ineffective because he "conducted no independent investigation, and counseled petitioner to accept a plea despite his claims of innocence and multiple alternative viable defenses." ECF No. 1 at 32. McCroskey was indicted on May 18, 2010. He eventually entered an *Alford* plea on February 25, 2011. For those nine months in between, the state court records show the extensive efforts taken by McCroksey's defense attorney: he filed numerous motions, and was successful on many; namely, he successfully suppressed a statement made by McCroskey to law enforcement in January of 2010 because the statement was obtained in violation of McCroskey's rights under *Miranda v. Arizona*. Furthermore, as discussed above, McCroskey's attorney compelled disclosure of the special grand jury transcript, and other potential exculpatory evidence. The state court records are replete with almost daily communications between McCroskey's attorney and the prosecutor; discussing DNA test results, communicating about anticipated motions, and most notably, discussing any plea bargains that might be available for McCroskey. Again, in light of the state court records, it was not unreasonable for the state court to determine that McCroskey's attorney

diligently investigated McCroskey's case, and advised him within the wide range of professional assistance. As McCroskey's attorney stated in multiple letters updating McCroskey on new plea agreement offers by the Commonwealth, the decision to accept a plea agreement was McCroskey's decision to make. Therefore, the Court finds that McCroskey failed to meet his formidable burden under the performance prong for Claim Four as well.

### 2. Prejudice to McCroskey

Assuming the Court did find that the state court was unreasonable in deciding trial counsel's performance was not deficient, the Court would still have to find the that the state court was also unreasonable in rejecting any alleged prejudice McCroskey suffered as a result. *Premo*, 131 S. Ct. at 740. Here, in the context of a plea, McCroskey must show that if he had not received this deficient advice, "he would not have pleaded guilty and would have insisted on going to trial." *Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Under *Hill*, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* In the context of a guilty plea, the "prejudice" inquiry still closely resembles the analysis done by courts reviewing ineffective assistance of counsel claims for convictions obtained through trial. Ultimately, the question becomes: but for counsel's alleged errors, would counsel have recommended pleading not guilty and moreover, would that recommendation have been based on evidence or other external factors that "likely would have changed the outcome of a trial." *Id.* In other words, under *Hill*, *habeas* petitioners carry the burden of showing that without counsel's deficient performance, they would have not pled guilty, but instead proceeded to trial, and likely have not

19

been convicted at trial. This Court must determine whether this decision by the state court was an "'unreasonable application of' clearly established federal law [under *Strickland* and *Hill*]." *Premo*, 131 S. Ct. at 739; 28 U.S.C. § 2254(d)(1).

The plea agreement reduced the charge from first-degree murder, which carried a maximum of life in prison, to second-degree murder, which carried a maximum of forty years in prison. Moreover, the plea agreement recommended the sentence ultimately imposed by the Court, for a total of twenty-five years of active incarceration. Even though McCroskey makes the conclusory statement that he "would not have accepted a plea but would have insisted on trial," ECF No. 1 at 7, he fails to meet this high burden. In fact, he provides no support for this argument, other than his conclusory statement that he would have gone to trial. In light of the DNA evidence in the state court record, and the plea agreement that dramatically reduced the amount of time he will spend in prison, this Court cannot say that even if his attorney's advice was deficient, McCroskey would have proceeded to trial and likely not been convicted, had he been advised differently. Therefore, the Court finds the state court's holding under the prejudice prong was not unreasonable.

In summary, the state court's determination was not contrary to, or an unreasonable application of, clearly established federal law under *Strickland*. 28 U.S.C. § 2254(d)(1). Thus, because it was not unreasonable for the state court to find that McCroskey failed to satisfy both the performance and the prejudice prongs under *Strickland*, this Court would dismiss Claims One and Four in his Petition on the merits. *Accord Premo*, 131 S. Ct. at 740.

## V. RECOMMENDATION

For these reasons, the undersigned finds McCroskey's claims are either procedurally defaulted or without merit as discussed above and, therefore, **RECOMMENDS** the Respondent's Motion to Dismiss, ECF No. 14, be **GRANTED** and McCroskey's Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

## VI. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the Petitioner and counsel of record for the Respondent.

> /s/
> Lawrence R. Leonard
> United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
January 16, 2014

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Mr. Benny W. McCroskey, #1031961
Nottoway Correctional Center
P.O. Box 488
Burkeville, Virginia 23922
*Pro se Petitioner*

Mr. Eugene P. Murphy, Esq.
Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219
*Counsel for the Respondent*

Fernando Galindo
Clerk of the Court

By:

Deputy Clerk
January 16, 2014

23